**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**COREY MATTHEW EBBERT,**

          Plaintiff,

**v.**

**NANCY A. BERRYHILL,
Acting Commissioner of Social Security,**

          Defendant.

**CIVIL ACTION NO.: 1:17-CV-193
(KEELEY)**

## <u>REPORT AND RECOMMENDATION</u>

### I.   <u>INTRODUCTION</u>

This case arises from the denial of Plaintiff Corey Matthew Ebbert's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI"). After Plaintiff's applications proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), George A. Mills, III, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 18] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 21] be **GRANTED**.

## II.   <u>PROCEDURAL HISTORY</u>

On or about January 3, 2014, Plaintiff filed a claim for DIB and SSI, alleging that his disability began on October 15, 2013. R. 243–52. His claim for DIB and SSI arises from what appears to be sudden onset complications from an old brachial plexus injury to his left shoulder that Plaintiff sustained while playing football in high school. R. 54, 426. In October 2013, Plaintiff presented to physicians with cervical dystonia, a curvature of his cervical spine, seemingly caused by muscle spasms, that results in Plaintiff's neck being bent forward and to the right, reducing his range of motion. R. 428, 443. Plaintiff has also presented with chronic pain, headaches, migraines, anxiety, and depression. R. 426–27.

Plaintiff's claim for disability benefits was initially denied on March 25, 2014, and again upon reconsideration on May 30, 2014. R. 160, 165, 175, 182. After these denials, Plaintiff filed a written request for a hearing. R. 189. On January 14, 2016, a video hearing was held before the ALJ. R. 28, 49. The ALJ presided over the hearing from Morgantown, West Virginia. R. 28. Plaintiff, represented by Shannon Bateson, Esq., appeared and testified from Wheeling, West Virginia. R. 28, 172, 203. Linda Dezak, an impartial vocational expert, also appeared and testified at the hearing. R. 49. On March 2, 2016, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 25. On September 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On November 7, 2017, Plaintiff, through counsel, Carter Zerbe, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision

2

pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on February 5, 2018. Answer, ECF No. 12; Admin. R., ECF No. 13. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 18; Def.'s Mot. Summ. J., ECF No. 21. Neither party filed a response.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## III.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d

802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## IV.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since October 15, 2013, the alleged onset date of Plaintiff's disability. R. 30. At step two, the ALJ found that Plaintiff suffers from following severe impairments: moderate cervical curvature (leftward) dystonia/positional cervical curvature vs. torticollis; left shoulder instability (prior brachial plexus injury); headaches; obesity; anxiety disorder; and major depressive disorder without psychotic features. R. 30–31. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments. R. 31–32. At step four, the ALJ determined that Plaintiff has "the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with the following limitations:

> no climbing ladders, ropes or scaffolds and no more than occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; requires no more than frequent overhead reaching with the left upper extremity; avoids concentrated exposure to cold temperatures, vibrations, and hazards of moving plant machinery and unprotected heights; is limited to simple unskilled work with no rapid production or assembly line work and limited decision making; and involves no more than occasional interaction with supervisors and coworkers and no interaction with the public.

R. 32–37. Then, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 37. At step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. R. 38–39. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 39.

## V.    DISCUSSION

### A.    Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**B.    Contentions of the Parties**

In his Motion for Summary Judgment, Plaintiff contends that the ALJ's decision is arbitrary, contrary to law, and unsupported by substantial evidence. ECF No. 18, at 2. Specifically, Plaintiff submits that in his RFC determination: (1) "[t]he ALJ failed to evaluate the treating source opinion evidence consistent with the regulations, Agency policy, and Fourth Circuit precedent," and (2) "[t]he ALJ's credibility finding is generally defective based on the foregoing error, and also specifically because it neglects to consider Plaintiff's strong work history." Pl.'s Br. Supp. Mot. Summ. J. 1, ECF No. 18-1. Based on the alleged errors, Plaintiff requests that the Court reverse the Commissioner's final decision and remand his case for further administrative proceedings. Id. at 25.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. ECF No. 21, at 1. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) the ALJ's evaluation of the medical opinions is supported by substantial evidence, and (2) the ALJ's credibility assessment of Plaintiff is supported by substantial evidence. Def.'s Br. Supp. Mot. Summ. J. 7, 11, ECF No. 22. Accordingly, the Commissioner requests that the Court uphold the ALJ's decision and grant summary judgment in favor of the Commissioner. ECF No 15, at 13.

### C. The ALJ's RFC Assessment is Supported by Substantial Evidence

#### 1. The ALJ's Assignment of Less Weight to Dr. Govindan's 2015 Opinion than Dr. Govindan's 2014 opinion is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to provide "good/specific/supported" reasons for giving Dr. Srini Govindan's 2015 opinion, a treating physician's opinion, less weight than his 2014 opinion. ECF 18-1, at 10. Plaintiff contends that the ALJ failed to acknowledge that Dr. Govindan is Plaintiff's treating physician, failed to discuss how Dr. Govindan's status as a specialist weighed in the ALJ's mind, and failed to give consideration to the fact that Dr. Govindan has actually examined Plaintiff on multiple occasions. Id. at 10–11. Plaintiff avers that the ALJ, therefore, substituted his own lay opinion for that of a medical expert. Id. at 11, 18. Additionally, Plaintiff argues that the state agency medical consultants did not have the benefit of reviewing Dr. Govindan's 2015 opinion while they were formulating their medical opinions. Id. at 12. Finally, Plaintiff asserts that Dr. Govindan's 2015 opinion is not inconsistent with Plaintiff's medical records. Id. at 15, 18–24.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015). "[The attending physicians rule] requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence." Coffman, 829 F.2d at 517. "While the testimony of a treating physician is often accorded greater weight, this 'treating physician rule . . . does not require that the [treating physician's] testimony be given controlling weight.'" Criss v. Comm'r of Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N. D. W. Va. June 26, 2017) (quoting Anderson v. Comm'r of Soc. Sec., 127 F. App'x 96, 97 (4th Cir. 2005)).

"If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight." Anderson, 127 F. App'x at 97.

Furthermore, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). For example, the Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Therefore, a medical source that offers an opinion on whether an individual is disabled or unable to work "can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5.

In evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016). The following factors are considered in deciding how to weigh any medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the treating source opinion. See Pinson v. McMahon, 3:07-1056, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed the treating source's opinion even though he did not list the five factors and specifically address each one).

In reviewing Plaintiff's case, the ALJ was required to evaluate and weigh four medical opinions. First, he gave great weight[1] to the two medical opinions of state agency medical consultants, Rogelio Lim, M.D. and Amy Wirts, M.D. R. 35. Both Dr. Lim and Dr. Wirts opined that Plaintiff could (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk about 6 hours in an 8-hour workday, (4) sit about 6 hours in an 8-hour workday, (5) occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and (6) never climb ladders/ropes/scaffolds. R. 107–09, 136–38. The ALJ concluded that these medical opinions were consistent with the objective medical evidence, namely: Plaintiff's treatment, imaging, and examinations; reports of improvement in symptoms; lack of hospitalizations for his symptoms; and his activities of daily living. R. 34–35; see also R. 342 (PT produced some temporary relief of symptoms), 346 (Plaintiff reports overall

---

[1] The undersigned notes that Plaintiff is incorrect when he asserts in his memorandum that the ALJ assigned dispositive weight to the state agency medical consultants' medical opinions. ECF No. 18-1, at 9, 12.

improvements in symptoms with PT), 362 (Plaintiff denies headaches, is not concerned about ambulation or mobility, denies difficulty initiating gait), 385 (unremarkable MRI of brachial plexus), 415 (normal CT of cervical spine), 422 (no acute intracranial findings on MRI of brain), 426 (first Botox injection did help some with neck muscle relaxation), 508 (Plaintiff reports some improvement with Botox injections), 559 (Plaintiff reports meds are working well), 616 (MRI of cervical spine shows moderate leftward cervical curvature, possibly positional or could indicate torticollis, otherwise unremarkable), 712 (Plaintiff reports doing very good on Fentanyl patch), 746 (Plaintiff reports Fentanyl patch working well to control his pain), 755 (duragesic patch helps Plaintiff's pain), 782 (50 mcg Fentanyl patch working much better to control Plaintiff's pain, no adverse effects to the patch reported), 791 (Plaintiff reports some relief with increased range of motion as of June 3, 2015), 793 (Plaintiff reports 25% improvement as of July 29, 2015), 833 (Plaintiff reports 15% improvement as of September 29, 2015), 853 (moderate pain improvement and increased mobility), 859–60 (Tomamax reported as helping with intensity of Plaintiff's headaches, but caused intolerable side effects, Plaintiff switched to Zonegran for migraines to reduce side effects).

Second, the ALJ gave some weight to Dr. Govindan's 2014 medical opinion. R. 34–35. In his 2014 opinion, Dr. Govindan opined that Plaintiff could work an eight-hour day but was limited to 3 hours of sitting, 2 hours of standing, and 3 hours of walking. R. 593. Dr. Govindan also opined that Plaintiff had limited foot control, grasping, pushing, pulling, handling, fine manipulation, and fingering. R. 594. The ALJ concluded that the objective medical findings did not support these opinions. R. 35. First, the ALJ noted that the unremarkable imaging of Plaintiff's spine, reports of

dizziness, and his range of motion limitations, do not support the conclusion that Plaintiff cannot sit for 6 hours a day. Id. Second, the ALJ noted that the physical examinations of Plaintiff, which generally showed a 5/5 muscle strength, normal tone, and normal gait, do not support the conclusion that Plaintiff has limited foot and hand control. R. 34–35; see also R. 358 (showing 5/5 muscle strength for deltoid, biceps, triceps, wrist extension, wrist flexion, finger extension, and finger flexion), 363 (5/5 strength in bilateral upper and lower extremities), 577 (5/5 strength in Plaintiff's biceps, triceps, and deltoid; Plaintiff able to demonstrate AIN, PIN, radial, ulnar, and median nerve function distally), 659 (muscle strength 5/5 in all major muscle groups, normal overall tone, motor and sensory function, reflexes, gait and coordination are all intact), 666 (5/5 graded muscle strength of the iliopsoas, quadriceps, hip adductors, gluteus maximus and medius), 793 (on July 29, 2015, deltoids, biceps and triceps and intrinsic strengths are intact and sensory functions are within normal limits), 833 (on September 29, 2015, deltoids, biceps, triceps strengths are intact and sensor functions are within normal limits), 853 (motor: 5/5 throughout), 860 (right upper and lower extremities show normal tone and strength, left upper and lower extremities show 4+/5 strength throughout, reflexes were symmetric in upper and lower extremities).

Finally, the ALJ gave less weight to Dr. Govindan's 2015 medical opinion than his 2014 opinion. R. 35. In his 2015 opinion, Dr. Govindan opined that Plaintiff's maximum ability to stand and walk in an eight-hour work day was less than 2 hours, and that Plaintiff's maximum ability to sit in an eight-hour work day was about 2 hours. R. 766. Additionally, Dr. Govindan's clinic notes, dated the same day as his 2015 opinion, stated that Plaintiff was unable to work and was disabled. R. 810. The ALJ

concluded that these opinions were not supported by the treatment notes that were made after Dr. Govindan's 2014 opinion, because those notes showed an improvement in range of motion of the neck, pain control, intensity of headaches, and a reduction in symptoms. R. 35. Additionally, the ALJ noted that a determination as to whether an individual is disabled is an administrative finding reserved to the Commissioner. Id.

The undersigned concludes that Plaintiff's arguments regarding Dr. Govindan's 2015 opinion are without merit and that the ALJ's determinations are supported by substantial evidence in the record. First, the ALJ was not required to specifically list and address each factor that goes into his evaluation of a physician's medical opinion, as long as his decision is sufficiently supported by the evidence in the record. See Pinson, 3:07-1056, 2009 WL 763553, at *10. In this case, Plaintiff's counsel specifically stated twice at the hearing that Dr. Govindan was Plaintiff's treating neurologist. R. 53 (Plaintiff "had received on going steady treatment with Dr. Gavonovin [PHONETIC] at WVU, the neurologist . . ."), 93 ("The last hypothetical I asked was based purely on 33F, who was Dr. Gavonovin who had been the treating neurologist in this case."). The ALJ affirmatively acknowledged counsel's second reference to Dr. Govindan as "the treating neurologist in this case." R. 93. Additionally, Plaintiff's counsel requested that the ALJ give Dr. Govindan's 2015 opinion controlling weight because it was a treating source opinion. R. 94. In his written decision, the ALJ specifically stated was Dr. Govindan was a neurologist, R. 35, and he also referenced several "Neurology Clinic Notes" authored by Dr. Govindan which indicated that Dr. Govindan had performed a physical exam of Plaintiff. R. 34, 433, 441, 505, 680, 688, 760. While the ALJ did not explicitly list how Dr. Govindan's specialty, treating relationship, and examining relationship affected his

decision, the record makes it clear that the ALJ implicitly considered these factors. See Pinson, 3:07-1056, 2009 WL 763553, at *10 (finding implicit consideration of the factors sufficient when the ALJ sufficiently considered the opinion against the record medical evidence). The ALJ was aware of Dr. Govindan's specialty, treating relationship, and examining relationship with Plaintiff, and the ALJ pointed to ample medical findings in the record to support his evaluation of Dr. Govindan's 2015 opinion. So, Plaintiff's arguments that the ALJ failed to acknowledge Dr. Govindan's treating and examining relationship with Plaintiff and failed to discuss how Dr. Govindan's status as a specialist weighed in the ALJ's mind are without merit.

Second, where the evidence in the record supports the ALJ's conclusion, the ALJ is not substituting his own lay opinion for those opinions of others. See Gorayeb v. Astrue, 845 F. Supp. 2d 753, 758 (N. D. W. Va. 2011). An ALJ is responsible for making the determination or decision about whether a claimant meets the statutory definition of disability based on all the evidence in the record, including medical opinions. See 20 C.F.R. §§ 404.1527(b), 416.927(b). In this case, the ALJ's determination for each medical opinion, as noted above, is substantially supported by objective medical evidence in the record.[2]

---

[2] To the extent that Plaintiff is making an argument that the ALJ was required to develop the record (Plaintiff's brief is unclear), the undersigned concludes that such an argument is also without merit. See ECF No. 18-1, at 17–18. Plaintiff seems to think that Dr. Govindan's 2015 opinion was "uncontroverted" when in fact, the record contains ample medical evidence from 2015 indicating that Plaintiff was improving with treatment. See R. 746, 782, 793 (Plaintiff reports 25% improvement as of July 29, 2015), 833 (Plaintiff reports 15% improvement as of September 29, 2015), 853, 859–60. Furthermore, Plaintiff was represented by counsel at his administrative hearing, and one of the first things the ALJ asked of Plaintiff's counsel was whether Plaintiff's medical records were up to date. R. 51–52. Plaintiff's counsel proceeded to confirm that everything was up to date, with the exception of one, very recent medical record which the ALJ admitted into evidence at the hearing. Id. Taken in the overall context of his arguments, Plaintiff's assertion that the ALJ "had numerous options to develop the record" appears to be just another expression of Plaintiff's dissatisfaction with the ALJ's conclusion that

Third, an ALJ may rely on state agency medical opinions even though there is a delay between the formation of the medical opinion and the hearing. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3rd Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding' . . . is an update to the report required."); see also Thomas v. Colvin, No. 3:13-cv-56, 2104 WL 2892360, at *7 (N. D. W. Va. June 25, 2014) (adopting the Chandler court's rationale when concluding that a one year passage between the formation of the medical opinion and the hearing did not invalidate or otherwise undermine the medical opinion). In this case, Plaintiff argues that Drs. Lim and Wirts were not able to review Dr. Govindan's 2015 opinion before formulating their medical opinions. ECF No. 18-1, at 12. However, the ALJ concluded that Dr. Govindan's 2015 opinion was inconsistent with the 2015 medical records which established some improvement of Plaintiff's condition. See R. 793, 833. Furthermore, the ALJ concluded that Drs. Lim and Wirts' medical opinions were consistent with the medical evidence, which included the 2015 medical records. See R. 34–35. So, the weight assigned to Drs. Lim and Wirts' medical opinions by the ALJ, even though they did not review Dr. Govindan's 2015 opinion or the 2015 medical records, was supported by substantial evidence in the record and was not error.

---

Dr. Govindan's 2015 opinion was inconsistent with the objective medical evidence and was therefore accorded less weight than his 2014 opinion. But such conflicts among the evidence in the record are precisely what the ALJ is supposed to resolve. As this section discusses in detail, that resolution by the ALJ in this case was supported by substantial evidence.

Fourth, it is not the role of a reviewing court to "reweigh conflicting evidence" or "substitute [its] judgment for that of the ALJ['s]." See Johnson, 434 F.3d at 653. Plaintiff's argument that Dr. Govindan's 2015 opinion is not inconsistent with the record effectively asks this Court to reweigh the medical evidence and to substitute its judgment for the ALJ's. The ALJ referred to ample medical findings in the record that support his evaluations of each medical opinion. It is not a reviewing court's place to disturb this evaluation simply because it may interpret some other medical findings to be consistent with a physician's opinion.

Finally, an ALJ is never required to accept a medical opinion's conclusion regarding issues solely reserved to the Commissioner for determination. SSR 96-5p, 1996 WL 374183, at *2. The Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). So, the ALJ was correct to afford that portion of Dr. Govindan's 2015 opinion, which stated in part that Plaintiff was disabled and unable to work, little weight.

After a careful review of the ALJ's evaluations of the medical opinions and the evidence of record, the undersigned finds that the ALJ carefully balanced the evidence, assigned weights to the competing medical opinions, and explained his rationale for doing so. See Smith, 395 F. Supp. 2d at 307. The undersigned also finds that the ALJ explained why the medical evidence did not support Dr. Govindan's 2015 opinion. See Buchanan, No. 1:14cv209, 2016 WL 485339, at *4. Accordingly, the Court concludes that the ALJ's decision to give Dr. Govindan's 2015 opinion less weight than his 2014 opinion is supported by substantial evidence in the record.

16

**2. The ALJ's Credibility Assessment of Plaintiff is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's credibility assessment of Plaintiff's statements regarding his impairments and work-related limitations is defective based on the little weight given to Dr. Govindan's 2015 opinion and on the ALJ's failure to consider Plaintiff's strong work history. Because the weight assigned to Dr. Govindan's 2015 opinion by the ALJ is supported by substantial evidence, as discussed above, the Court will only consider Plaintiff's work history argument in this section.

Because the ALJ has the opportunity to observe the demeanor of the claimant, the ALJ's observations concerning the claimant's credibility are given great weight. Shively, 739 F.2d at 989–90. This Court has determined that "[a]n ALJ's credibility determinations are 'virtually unreviewable' . . . ." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N. D. W. Va. Feb. 8, 2011). "If the ALJ meets . . . her basic duty of explanation, then 'an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" Criss, 2017 WL 2730647, at *3 (alteration in original) (citations omitted). The ALJ's "determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

An ALJ is required to *consider* past work history when making his credibility determination. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("We will consider all the evidence presented, including information about your prior work record . . . ."). However, "[c]ase law consistently suggests that Plaintiff's work record, standing alone, is

insufficient to contravene an ALJ's credibility finding." Cooper v. Astrue, 4:10CV110, 2011 WL 6742500, at *7 (E. D. Va. Nov. 8, 2011); see also Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998) (stating that "work history is just one of many factors" considered in assessing credibility). When there is *little to no* evidence in the record regarding a claimant's past work history, an ALJ's lack of discussion regarding a claimant's past work history *may* warrant remand. See Rosado v. Berryhill, 4:16-cv-173, 2018 WL 816578, at *15 (E. D. Va. Jan. 22, 2018) (expressing concern that remand might be necessary where the ALJ only mentioned claimant's past work history a couple of times in the record at a very high level of generality). On the other hand, when an ALJ develops the record regarding a claimant's past work history at the hearing, and specifically mentions the claimant's work history in his decision, failure to specifically note a claimant's past work history in the credibility determination is not reversible error. See Locker v. Berryhill, 2:17-cv-342, 2018 WL 4232889, at *8 (E. D. Va. July 6, 2018) (encouraging ALJs to articulate more clearly the role of past work history in their credibility determinations, but ultimately deciding that sufficient reference to that claimant's past work history in the ALJ's decision entails that remand is not warranted).

In this case, after careful consideration of the evidence before him, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." R. 34. However, the ALJ went on to conclude that Plaintiff's "allegations as to the intensity and limitation effects of his impairments are not entirely credible *when viewed with the record as a whole* . . . ." R. 35 (emphasis added). In concluding that Plaintiff's statements regarding his limitations were not entirely credible, the ALJ first noted that Plaintiff's statements were

inconsistent with his activities of daily living. R. 33. In his function report, Plaintiff reports minimal limitations regarding his personal care. R. 297. While he reported some difficulty bending to put on socks and lifting overhead to put on shirts, Plaintiff can bathe, care for his hair, use the toilet, and generally feed himself without assistance. Id. He reported that he prepares his own meals daily including "sandwiches, cereal, frozen dinners, single food not to [sic] complex." R. 298. Plaintiff reported that he shops in stores to buy a few lightweight items once every two weeks. R. 299. He reported that he watches TV and listens to music for short periods of time daily. R. 297, 300. Plaintiff reported that he attends family gatherings for a short period of time on a weekly basis. R. 300. Although he receives some assistance from his neighbor, mother, and sister, Plaintiff appears take care of his two-year-old daughter at times on his own. R. 74–75, 78–79, 297.

Second, the ALJ reviewed the objective medical evidence and concluded that that evidence undermined Plaintiff's credibility as to the severity of his symptoms. R. 33; see Section V.C.1. above. To highlight just a couple medical findings that the ALJ relied on, Plaintiff reported some improvement with physical therapy. See, e.g., R. 346. Plaintiff reported pain management improvement with the Fentanyl patch. See, e.g., R. 712, 746, 755. Plaintiff also reported a 15-25% improvement in 2015. R. 793, 833. Overall, the ALJ concluded that the medical evidence indicated improvements in Plaintiff's condition with proper treatment. R. 34.

Finally, the ALJ specifically stated in his RFC assessment that he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and *other evidence*, based on the

requirements of 20 C.F.R. §§ 404.1529, 416.929. R. 32. He stated that he made his credibility determination based on the Plaintiff's daily activities, the medical evidence of record, and *the record as a whole*. R. 34. The record reveals a detailed exploration of Plaintiff's work history occurred at the hearing. R. 59–66. The ALJ started with Plaintiff's first job in 2004 and continued through his last job as a coal miner in 2014, inquiring along the way as to the duration of employment and the nature of the work Plaintiff did in his various positions. Additionally, the vocational expert went through Plaintiff's past work history during the hearing, and the ALJ specifically listed Plaintiff's past employment when determining that Plaintiff is unable to do any past relevant work. R. 37, 84–88; see Locker, 2018 WL 4232889, at *8 ("In his decision, the ALJ referenced Plaintiff's work history, . . . and discussed Plaintiff's 'past relevant work as a laundry attendant and office cleaner' and the demands of those jobs, as well as the [vocational expert]'s testimony that 'an individual with the [Plaintiff's] [RFC] could perform [the] job,' . . . (referring to Plaintiff's job as a laundry attendant in particular). While it is not altogether clear the precise extent to which the ALJ specifically considered Plaintiff's work history in evaluating her credibility, his references to it are sufficient to establish that it played a role with respect to his credibility determination and RFC assessment.").

After a careful review of the ALJ's decision and the evidence of record, the undersigned finds that the ALJ sufficiently referenced Plaintiff's work history in his credibility determination, and therefore considered all required factors and was sufficiently specific to make clear his reasoning in finding Plaintiff not entirely credible. Because the ALJ met his basic duty of explanation, the ALJ's credibility determination will only be reversed if it is patently wrong. See Criss, 2017 WL 2730647, at *3. Here,

Plaintiff fails to satisfy this high burden. Accordingly, the Court concludes that the ALJ's credibility assessment is supported by substantial evidence.

## VI.    <u>RECOMMENDATION</u>

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 18] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 21] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Wright v. Collins</u>, 766 F.2d 841, 845-48 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 28th day of September, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE